UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER ROSADO-MARTINEZ, et al.,

    Plaintiffs,

v.

PAUL N. JACKSON, et al.,

    Defendants.
_____/

Case No: 1:16-cv-496

HON. PAUL L. MALONEY

## **OPINION**

This is a diversity action arising from an automobile accident. In January 2015, Plaintiff Christopher Rosado-Martinez was driving east on I-94 near Battle Creek, Michigan, when a semi tractor-trailer on the westbound side of the highway crossed the median and struck Plaintiff's car. Defendant Success Leasing, Inc. owned the tractor-trailer, and Defendant Paul Jackson drove the tractor-trailer as an employee of Defendant New Prime, Inc. Plaintiff suffered injuries from the accident and brought this action against Defendants, alleging negligence and negligent entrustment. Plaintiff's wife, Jami Rosado, seeks damages due to loss of consortium. Before the Court are four motions in limine filed by Defendants (ECF Nos. 32, 34, 36, 41).

**A. Motion in Limine: Jackson's Driving Record (ECF No. 32)**

In their first motion in limine, Defendants seek to exclude "all testimony, argument, presentation, or other suggestions by Plaintiff pertaining to prior traffic tickets, prior accidents, reprimands, [and] driving records" of Defendant Jackson, citing Rules 401, 403, 404(b) of the Federal Rules of Evidence. (Mot. in Limine, ECF No. 32.) In February 2014, Jackson was making

a u-turn when the trailer hit a pole because the road gave way.[1] (Jackson Dep. 16, 24, ECF No. 32-2.) On another occasion, he was given a speeding ticket for going too fast in a construction zone. (*Id.* at 23.)

Defendants claim that these records are not relevant, and their probative value, if any, is substantially outweighed by the risk of unfair prejudice. Defendants also assert that Plaintiffs intend to use evidence of Jackson's prior bad acts in order to demonstrate Jackson's character, and to demonstrate that he acted in accordance with that character on the date of the accident, which is prohibited by Rule 404(b). The Court disagrees. One of Plaintiffs' claims is negligent entrustment, i.e., that Defendants New Prime and Success Leasing were negligent in entrusting Jackson with the tractor-trailer because they knew, or should have known, based on his driving record, that he was not competent to drive the tractor-trailer. *See Allstate Ins. Co. v. Freeman*, 408 N.W.2d 153, 157 (Mich. Ct. App. 1987) (describing negligent entrustment as having two elements: "First, the entrustor is negligent in entrusting the instrumentality to the entrustee. Second, the entrustee must negligently or recklessly misuse the instrumentality."); *see also Zokas v. Friend*, 351 N.W.2d 859, 861 (Mich. Ct. App. 1984) ("[A]n owner or lender who entrusts a person with a dangerous instrumentality may be held liable to a third party who is injured by the negligent act of the entrustee, where the owner or lender knew, or could have reasonably been expected to know, that the person entrusted was incompetent."); *Best v. Dante Gentilini Trucking, Inc.*, 778 F. Supp. 360, 366 (E.D. Mich. 1991) (citing *Moning v. Alfono*, 254 N.W.2d 759 (Mich. 1977)) (noting that, to prevail under a theory of

---

[1] Jackson testified that he was given a ticket for driving too fast under the conditions, though it is not clear whether he was referring to the accident involving the pole or the accident involving Plaintiff. (*Id.* at 19.) Later in his deposition, Jackson agreed that he had received two tickets prior to the accident, one for making a u-turn and one for speeding in a construction zone. (*Id.* at 24.)

2

negligent entrustment, a plaintiff must establish that a defendant "knew or should have known of hte unreasonable risk propensities of the entrustee"); *Youngberg v. McKeough*, 534 F. App'x 471, 477 (6th Cir. 2013) ("To make out a claim for either negligent supervision or negligent entrustment under Michigan law, [Plaintiff] must have submitted evidence to show that [Defendants] could have or should have foreseen that [the driver] was likely to injure someone while driving the MasterCraft."). Jackson's driving record is relevant to this claim, and its relevance is not substantially outweighed by the risk of unfair prejudice.

If Plaintiffs were asserting only a claim against Jackson, then Jackson's driving record would likely be barred by Rule 404(b).[2] In this case, however, the evidence is admissible because it is essential to prove the negligent-entrustment claim. *See Woodson v. Porter Brown Limestone Co., Inc.*, 916 S.W.2d 896, 908 (Tenn. 1996) (admitting evidence of defendant's poor driving record; though prejudicial, the evidence was essential to proving negligent entrustment); Fed. R. Evid. 405(b) (permitting evidence of specific instances of conduct to prove character or a character trait, where the character or character trait is "an essential element of a charge, claim, or defense"); *see also* Advisory Committee Notes to Rule 404(b), 1972 Proposed Rules, Note to Subdivision (a) (noting that character is truly "in issue," and Rule 404(b) does not apply, to a claim regarding the "competency of the driver in an action for negligently entrusting a motor vehicle to an incompetent driver").

On the other hand, a single speeding ticket and one accident in which the trailer struck a pole

---

[2] In light of this, a Rule 105 limiting instruction may be appropriate.

is not very strong evidence of incompetence.³ But for the same reason, the prejudicial value is low. The jury can fairly weigh this evidence and give it the appropriate weight when determining whether New Prime or Success Leasing negligently entrusted the tractor-trailer to an incompetent driver. Of course this evidence is somewhat prejudicial, but the probative value of the evidence is not significantly outweighed by the risk of unfair prejudice under Rule 403.

In a reply in support of their motion (ECF No. 70), Defendants offer new evidence of Jackson's driving record and assert that Jackson does not, in fact, have a poor driving record. Defendants acknowledge that Jackson had one speeding ticket and was involved in one accident prior to January 2015, during the course of over a year's time working for Defendants. In addition, Plaintiffs note that Defendant Jackson's driving record from the State of New York, his state of residence, shows no violations other than the ticket he received in connection with the accident in this case. Defendants contend that there is no evidence supporting Plaintiffs' claim that Defendants should have foreseen that Jackson would negligently drive his vehicle on the date of the accident.

Through their reply, Defendants are effectively asking the Court to weigh the evidence and make a finding as to whether Jackson has a poor driving record. A motion in limine is not the proper means to seek this relief. Accordingly, for the foregoing reasons, Defendants' motion is denied.

**B. Motion in Limine: Future Pain and Suffering (ECF No. 34)**

Defendants seek to exclude all evidence or suggestion that Rosado-Martinez will have future pain, suffering, weakness, or adverse consequences as a result of his ankle fracture, which was

---

³Indeed, in *Mowinski v. Bishop*, 163 N.W.2d 655 (Mich. Ct. App. 1968), the trial court refused to submit evidence of one speeding ticket and a ticket for an unsafe start occurring after two years of driving without incident. *Id.* at 657. This decision was upheld on appeal because the facts "in no way approach those set out in *Tortora v. General Motors Corporation* (1964), 373 Mich. 563, 130 N.W.2d 21, where the driver had been convicted of 11 speeding and 1 reckless driving violations in a 5-year period." *Id.* at 657.

repaired by orthopedic surgeon Dr. Gorman. Defendants believe that Plaintiffs will argue that future pain and suffering should include the risk/likelihood that Rosado-Martinez will develop post-traumatic arthritis[4] in his ankle. Defendants contend that Plaintiffs do not have adequate, reliable evidence of this possibility. A deposition of Dr. Gorman was scheduled after the date that the motion in limine was filed, but Defendants "anticipate" that Dr. Gorman will not provide sufficient, reliable data about future problems with Plaintiff's ankle. Defendants acknowledge that bone fractures can sometimes lead to future problems, including arthritis, but contend that post-traumatic arthritis is not likely to occur because "general medical sources" indicate that "arthritis or future problems from fractures occur only in about 12% of all fractures of the hip, knee and ankle," according to an article from the Cleveland Clinic. There are two issues raised by Defendants' objections: (1) the admissibility of any evidence related to future pain and suffering, and (2) the admissibility of evidence related to the possibility that Plaintiff will develop post-traumatic arthritis.

As to the evidence concerning future pain and suffering generally, testimony regarding Plaintiff's current medical treatment or condition may be adequate to permit the jury to consider future pain and suffering as a category of damages. *See Shinaburger v. Phillips*, 121 N.W.2d 693, 696 (Mich. 1963) (holding that jury could consider damages for future pain and suffering where the plaintiff testified that he was still suffering pain over a year after an assault, and a doctor testified that the plaintiff was still coming to him for treatment, even though there was no medical testimony that future pain and suffering would occur). Plaintiffs have provided medical records indicating that Rosado-Martinez continues to be treated for pain in his ankle that occasionally radiates up his leg.

---

[4]Post-traumatic arthritis is arthritis that arises from accelerated deterioration of a joint due to a prior injury.

5

On March 6, 2017, he met with Dr. Gorman because of this pain, and Dr. Gorman referred him to Dr. Vanhuysen. (ECF No. 66-2, PageID.530.) On March 29, Rosado-Martinez met with Dr. Vanhuysen, who diagnosed him with "[c]losed left ankle fracture, sequela, Peroneal tendinitis of left lower extremity." (ECF No. 66-3, PageID.532). If Plaintiff is still suffering pain from his injury over two years after the car accident, the jury can reasonably infer that this pain will continue in the future.

As to the evidence on post-traumatic arthritis, Defendants have misinterpreted the Cleveland Clinic article. It states that "[p]ost-traumatic arthritis causes 12% of osteoarthritis of the hip, knee, and ankle." (Ex. B, ECF No. 34-3, PageID.183.) It does not indicate what percentage of fractures lead to post-traumatic arthritis. (*Id.*) Thus, it does not support Defendants' argument that testimony about the risk of post-traumatic arthritis is *per se* too speculative and unreliable to support a claim for damages. Indeed, at least one court in Michigan has permitted testimony from a treating physician that the plaintiff is likely to develop posttraumatic arthritis in the future, and it held that such testimony can support an award for future damages. *See Rupersburg v. Etkin Skanska Constr. Co. of Mich.*, 2006 WL 3458177, at *4 (Mich. Ct. App. Nov. 30, 2006). Thus, Defendants' motion is denied.

**C. Motion in Limine: Effectiveness of Ice Melting Products & Jackson's Use of Cell Phone (ECF No. 36)**

Under Rules 403 and 702, Defendants seek to exclude evidence pertaining to the effectiveness of ice-melting products and of Rosado-Martinez's use of a cell phone immediately prior to the accident.

**1. Ice-Melting Products**

During Jackson's deposition, he was questioned about the effectiveness of salt to melt ice in extremely cold temperatures, and whether he was aware that salt does not work at those temperatures. Apparently, the temperature was below 25 degrees Fahrenheit on the date of the accident, and Plaintiffs contend that ice-melting products do not work at those temperatures. Defendants claim that Plaintiffs have not identified a witness qualified to testify about the type of ice-melting product used on I-94 and its ability to melt ice on the date of the collision.

In response, Plaintiffs assert that they identified Paul Gross as an expert who will testify salt and other ice-melting products are not effective to melt ice below 25 degrees. In Gross's affidavit, which was provided to Defendants in August 2016, Gross asserts that he has been qualified as an expert in "meteorology, climatology, and snow/ice removal[.]" (Gross Aff. 2, ECF No. 67-2.) He goes on to assert his opinion about the weather conditions at the location of the accident when it occurred, including the presence of snow and wind, and the temperature. (*Id.* at 3.) He does not state any opinions about the effectiveness of ice-melting products.

At this stage of the proceedings, it is not clear how any testimony by Gross concerning the effectiveness of ice-melting products will be relevant to this case. There does not appear to be any dispute that Jackson lost control of his vehicle due at least in part by the fact that there was ice on the road. To the extent that the ice contributed to the accident, Plaintiffs will have to show that Jackson failed to exercise due care when he knew or should have known that there would be ice on the road. The fact that an expert can confirm that the presence of salt or other ice-melting products would have been ineffective on the day in question does not, in itself, tend to make it more or less likely that a truck driver like Jackson (who is presumably not an ice-removal expert) knew or should have known that there would be ice on the road.

In any case, Defendants seek to exclude this evidence based on Rules 403 and 702 of the Rules of Evidence, rather than on relevance grounds under Rule 401. Rule 403 permits a court to exclude evidence if its probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Although Gross' testimony regarding the effectiveness of ice-melting appears to have very little probative value, the Court is not prepared to exclude it before hearing more of Plaintiffs' case. There does not appear to be a significant risk that, by allowing this evidence, there will be unfair prejudice, confusion of the issues, undue delay, or any of the other concerns mentioned in Rule 403.

Rule 702 permits a qualified expert to render an opinion if, among other things, the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Defendants assert that Plaintiffs have not identified an expert qualified in snow/ice removal, but as indicated above, Gross's affidavit expressly refers to his qualifications in that area. According to Plaintiffs, they provided a copy of this affidavit before the deadline for disclosing expert reports.[5] Thus, Defendants' objection under Rule 702 is overruled.

**2. Use of Cell Phone**

Jackson testified that he was talking to his brother on his cell phone, using a headset, when he lost control of the tractor-trailer. Defendants claim that Plaintiffs do not have a witness qualified

---

[5]Gross's affidavit does not offer any opinion regarding the effectiveness of snow-removal products and, thus, does not appear to satisfy the requirements in Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure regarding the disclosure of expert reports. Among other things, the rule requires "a complete statement of all opinions the witness will express." Fed. R. Civ. P. 26(a)(2)(B)(i). However, Defendants have not objected to Gross' testimony on this basis. Nor have they sought to exclude it under Rule 37(c).

to testify about the use of a cell phone while driving, or to testify that use of the cell phone was likely a proximate cause of the accident.

Jackson's use of a cell phone while driving is relevant to determine whether he was exercising ordinary care. The jury can draw upon its own experience to decide whether Jackson's use of a cell phone, in addition to any other circumstances, constituted negligence in the operation of the tractor-trailer, and whether that negligence was a proximate cause of the accident. The jury does not need specialized expert testimony to make this determination, so Defendants' objection is overruled.

**D. Motion to Strike Deposition of James VanHuysen for Failure to Disclose (ECF No. 41)**

Plaintiffs have listed Dr. VanHuysen as a possible witness in the joint pretrial memorandum, and have scheduled him for deposition on June 16, 2017. Defendants claim that Plaintiffs did not disclose VanHuysen until May 19. He is not listed in Plaintiffs' initial Rule 26 disclosure or the June 2016 preliminary witness list. Defendants expect that VanHuysen will be used to present expert witness testimony under Rule 702.

Rule 26(a)(2)(D) requires the disclosure of expert witnesses at least 90 days before trial, unless the Court orders otherwise. Under Rule 37, failure to comply with Rule 26(a) empowers the Court to preclude use of that expert and that expert's information at trial, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Defendants contend that VanHuysen is a treating physician that Rosado-Martinez started seeing on March 29, 2017, long after the deadline for disclosing witnesses, and less than 90 days before trial. Rosado-Martinez's other physician at Bronson Methodist Hospital, Dr. Gorman, referred

9

Plaintiff to Dr. VanHuysen. VanHuysen will testify about ongoing treatment for Plaintiff's injury. Apparently, VanHuysen saw Plaintiff on one occasion.

    Plaintiff's failure to disclose Dr. VanHuysen before the disclosure deadline is substantially justified by the fact that Vanhuysen did not begin treating Plaintiff until after the deadline. Moreover, given the limited scope of VanHuysen's likely testimony, and the fact that a deposition has been scheduled before trial, there does not appear to be any prejudice to Defendants. Consequently, this motion will be denied as well.


Dated: June 13, 2017                                                     /s/ Paul L. Maloney
                                                                                       Paul L. Maloney
                                                                                       United States District Judge